Filed 6/27/13  In re Jayden S. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JAYDEN S., A Person Coming Under the Juvenile Court Law. | B245331 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>L. V.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK79654) |

APPEAL from an order of the Superior Court of Los Angeles County, Sherri S. Sobel, Juvenile Court Referee.  (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jessica S. Mitchell, Senior Associate County Counsel, for Respondent.

## INTRODUCTION

Appellant mother seeks to reverse the dependency court's order terminating her parental rights with respect to her infant son. She contends that she was not given timely notice of the report prepared by the Department of Children and Family Services (Department) for the permanency planning hearing. She argues that without timely notice she was unable to present an adequate offer of proof in support of her request to set the matter for contest. We affirm and hold that even if the court had granted mother a contested hearing, she could not have established an exception to the termination of her parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

L. V. (mother) is the mother of Michael A. (Michael), born in October 2007, and Jayden S. (Jayden), born during the pendency of the case in September 2010. This case began in October 2009, when the Department received a referral alleging that Michael was being neglected and that mother, who was 20 years old at the time, was homeless and abusing methamphetamine. A petition was filed alleging that Michael was at risk of suffering serious physical harm or illness based on mother's substance abuse, her leaving him without a plan for his ongoing care, and her violent altercation with her brother, Eddy. The juvenile court placed Michael in foster care and ordered monitored visits for mother. In December 2009, the court sustained the petition finding that

Michael was subject to the court's jurisdiction under Welfare and Institutions Code[1] section 300, subdivision (b).[2]

Michael's foster mother reported in February 2010 that maternal grandmother was the only family member who consistently visited Michael. In April 2010, mother was arrested, convicted of a felony drug charge and incarcerated. After her release, mother had a monitored visit with Michael in May 2010. During the visit, mother informed the Department that she was pregnant with Jayden.

Mother failed to comply with court-ordered drug testing and outpatient drug treatment and entered an inpatient drug treatment program on August 12, 2010. However, approximately one week later, mother left the program and did not return for three days. Jayden was born on September 24, 2010. The Department detained Jayden several days later and placed him in the same foster home as Michael. A petition was filed, alleging that mother's history of illicit drug use rendered her incapable of providing Jayden with regular care and supervision. The court ordered that mother have monitored visits with Jayden two to four times per week.

In the Jurisdiction/Disposition report, the Department noted that mother visited with Jayden three times a week. The Department found that mother demonstrated denial about her drug problem and had a "difficult time" understanding that her history

---

[1]    All further statutory references are to the Welfare and Institutions Code.

[2]    Section 300, subdivision (b) provides a basis for juvenile court jurisdiction when the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the parent's failure to adequately supervise or protect the child.

of drug use and felony drug conviction were the reasons she would benefit from inpatient drug treatment. Mother had stated on various occasions that she was in a drug treatment program because the Department " 'put' " her there or because she " 'needed a place to live.' "

On December 1, 2010, the court sustained the petition under section 300, subdivision (b), finding that mother's history of substance abuse endangered Jayden's physical and emotional health and safety. Reunification services were ordered for mother, which included monitored visits with Jayden at least three times a week.

In March 2011, the Department reported that Jayden and Michael were thriving in their foster home. The social worker found that mother was "making good efforts at complying with her Court Ordered Services," but that she continued to demonstrate "immaturity and disorganization." The court granted mother two hours of unmonitored visits per week in addition to her monitored visitation.

In a status review report issued in June 2011, the Department noted that mother visited with Jayden and Michael twice a week. Half of her visits were monitored. The Department found that mother was in partial compliance with her case plan with respect to Jayden, and recommended further reunification services. The court granted the Department discretion to increase mother's monitored visits with Jayden and to grant her unmonitored day visits. The Department subsequently granted mother unmonitored day visits, during which she was permitted to have the children for six hours once a week. However, the social worker informed mother that she was not permitted to take her children to visit Eddy, who was considered one of the perpetrators of violence

4

during the time Michael lived with her. The Department had also found that Eddy had been diagnosed with bipolar disorder and was not undergoing any treatment.

At the contested six-month review hearing in July 2011, the court found that mother was in compliance with her case plan but concluded that Jayden would not yet be safe in her care full-time. The court ordered the continuation of reunification services as to Jayden, but terminated them with respect to Michael.

In January 2012, the Department reported that Jayden had lived with Michael in their foster home for over one year. The Department recommended that reunification services be terminated based on mother's inappropriate behavior during visits with Jayden. The Department found that mother had taken both children to see Eddy in deliberate defiance of the Department's requests not to do so. Mother's visits with the children had been reduced to monitored visits once a week for two or three hours.

At the contested review hearing on May 14, 2012, the social worker testified that mother understood that she was not supposed to expose Jayden to Eddy and yet had done so. The social worker also testified that mother had not been in compliance with her case plan with respect to the requirement that she attend individual therapy. Mother testified as well, and acknowledged that she had driven with the children in the car during visits, even though she did not have a driver's license.

With respect to mother's visitation with Jayden, the social worker testified that mother acted in a "parental manner" towards Jayden, changing his diaper, feeding him and playing with him. Furthermore, Jayden recognized her, ran to her, and, when mother asked for a kiss, repeatedly pulled his face forward for mother to kiss him.

5

During these visits, foster father did a "very good job in encouraging [Jayden] to sit with her and be with her." The social worker found that Jayden was "very comfortable" around mother, but that he was "equally comfortable" with his prospective adoptive parents.

The court found Michael to be adoptable and terminated mother's parental rights with respect to him.[3] With respect to Jayden, the court found that mother's partial compliance with the case plan was insufficient to support the return of Jayden to her. The court terminated reunification services and set a section 366.26[4] hearing. Notice of the section 366.26 hearing was personally served on mother on May 14, 2012.

The section 366.26 hearing was held on September 7, 2012. On the date of the hearing, the Department filed a report recommending termination of parental rights and the adoption of Jayden and served the report on mother. The report indicated that Jayden had "adapt[ed] quite well" to the home of his prospective adoptive parents, and that he "appear[ed] well cared for, nurtured, and loved."[5] At the hearing, mother's counsel requested that the court set a contested hearing on the grounds that she had a strong bond with Jayden due to her consistent visits with him. However, mother's counsel acknowledged that her visits were monitored and limited to once a week.

---

[3]   Mother appealed the trial court's termination of her parental rights with respect to Michael, and we affirmed the order. (*In re Michael A.* (Jan. 8, 2013, B241623).)

[4]   Section 366.26 governs the termination of parental rights of children adjudged dependents of the court.

[5]   The report also indicated that the prospective adoptive parents wanted to maintain contact with mother in the form of visits at least 4 or 5 times a year.

The court held that "that offer of proof will not be enough for a child this age" and declined to set the hearing for contest. The court found Jayden to be adoptable and terminated mother's parental rights with respect to him. Mother filed a timely notice of appeal on November 6, 2012.

*CONTENTIONS*

Mother argues that she was prejudiced by the Department's failure to timely serve her with a copy of its section 366.26 report and by the court's refusal to set the matter for contest. She contends that had she been given advance notice of the section 366.26 report, she would have been able to make an adequate offer of proof in support of her request for a contested hearing. She further argues that had she been granted a contested hearing, she would have been able to prove the beneficial parent-child relationship exception found in section 366.26, subdivision (c)(1)(B)(i).

*DISCUSSION*

1.      *The Untimely Service of the Section 366.26 Report Was Harmless Error*

Mother contends that she was denied due process when the Department untimely served the section 366.26 report on her. Mother failed to object to the untimely service of the section 366.26 report in the trial court and thus forfeited any challenge to it on appeal. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 226.) However, even if the argument was not forfeited, the lack of timely service was harmless error.

Section 366.21, subdivision (i) provides that whenever a section 366.26 hearing is held, the department must prepare an assessment report that is to include a discussion

7

of "[a] review of the amount of and nature of any contact between the child and his or her parents . . . since the time of placement." (Section 366.21, subd. (i)(1)(B).) California Rules of Court, rule 5.725, subdivision (c) provides that the Department must serve the assessment on each parent at least 10 days before the section 366.26 hearing.

It is undisputed that the Department only served the report on mother on the date of the hearing. Mother contends that the lack of timely service is "structural error" requiring automatic reversal pursuant to *Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535. Mother fails to note, however, that the holding of *Judith P.* has been eroded by subsequent Supreme Court decisions. (See, e.g., *In re James F.* (2008) 42 Cal.4th 901; *In re Celine R.* (2003) 31 Cal.4th 45). The Supreme Court has implied that structural error should not apply in dependency cases. (*Id.,* at p. 60.)

" ' "[T]he standard of review where a parent is deprived of a due process right is whether the error was harmless beyond a reasonable doubt. [Citations.]" ' " (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1556.) Under the harmless error test, a court may not set aside a judgment unless the error has resulted in a " 'miscarriage of justice.' " (*In re Celine R., supra,* 31 Cal.4th at p. 60.) Accordingly, reversal is permitted "only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error. [Citation.]" (*Ibid.*)

Mother argues that without timely notice of the section 366.26 report she was unable to present an adequate offer of proof in support of her request for a contested hearing. However, as explained below, even if she had been granted a contested

8

hearing, she could not have established that the "beneficial parent-child relationship" exception applied.

2.     *The Beneficial Parent-Child Relationship Exception Did Not Apply*

Section 366.26 provides that if a trial court finds, "by a clear and convincing standard, that it is likely [a child subject to dependency jurisdiction] will be adopted, the court shall terminate parental rights and order the child placed for adoption." (Section 366.26, subd. (c)(1).)  However, the court need not terminate parental rights if "[t]he court finds a compelling reason for determining that termination would be detrimental to the child due to . . . [¶] . . . [the parent's having] maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (Section 366.26, subd. (c)(1)(B)(i).)  "After [a] parent has failed to reunify [with his or her child] and the court has found the child likely to be adopted, it is the parent's burden to show exceptional circumstances exist.  [Citation.]"  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 574.)

Mother contends that had she been granted a contested hearing, she could have established the "beneficial parent-child relationship exception" contained in section 366.26, subdivision (c)(1)(B)(i).  Under the first requirement of this exception, the parent must show that she maintained regular visitation and contact with the child. At the section 366.26 hearing, the court noted that mother had consistently visited Jayden on a weekly basis for the past six months.  The Department has also acknowledged that mother consistently visited Jayden.  However, in order for the

9

beneficial parent-child relationship exception to apply, mother also had to show that she satisfied the second requirement of the exception.

To satisfy the second requirement, "the parent has the burden of showing either that (1) continuation of the parent-child relationship will promote the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents [citation] or (2) termination of the parental relationship would be detrimental to the child. . . . (Citation.) [¶] To overcome the preference for adoption and avoid termination of the natural parent's rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial,* positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.]" (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.)

"Interaction between natural parent and child will always confer some incidental benefit to the child. The significant attachment from child to parent results from the adult's attention to the child's needs for physical care, nourishment, comfort, affection and stimulation. [Citation.] The relationship arises from day-to-day interaction, companionship and shared experiences. [Citation.]" (*In re Autumn H., supra,* 27 Cal.App.4th at p. 575.)

Here, mother argues that Jayden would benefit from continuing a relationship with her because he was "closely bonded" with her and responded well to her visits as

illustrated by evidence that he was excited to see her, reached for her, wanted to be held by her, hugged her and kissed her.[6] Although the record indicates that Jayden was excited to see mother and that mother fed, hugged and kissed him, evidence that mother had loving contact with Jayden and was attentive to his needs during their visits is not sufficient to show that continuation of the relationship would promote Jayden's well-being to such a degree as to outweigh the well-being he would gain in a permanent home with his adoptive parents. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 953-954 ["To meet the burden of proof for the [beneficial parent-child relationship exception], the parent must show more than frequent and loving contact or pleasant visits."].)

"A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent." (*In re Angel B., supra,* 97 Cal.App.4th at p. 466.) Here, mother did not occupy a parental role in Jayden's life in part because he had lived with his prospective adoptive parents since several days after his birth. Mother acknowledged that she had no day-to-day interaction with Jayden and that she only saw him once a week in a monitored setting. When the Department reduced mother's visits to monitored visits once a week, the social worker did not report that Jayden missed mother or that he was

---

[6] Mother also argues that she could have presented evidence that she had previously had more frequent visits with Jayden, including unmonitored visits. However, mother acknowledges that the Department reduced her visits to weekly monitored visits due to her inappropriate behavior during visits. Therefore, mother's previous visitation schedule is not persuasive evidence that Jayden would benefit from continuing a relationship with her to the degree required by section 366.26, subdivision (c)(1)(B)(i).

11

ever distressed to part from her. On the other hand, there was evidence that Jayden had formed a strong bond with his prospective adoptive parents with whom he had lived for almost two years and evidence that he was "well cared for, nurtured, and loved" by them.

Under the limited circumstances of monitored weekly visits, mother could not have provided any significant contribution to taking care of Jayden's extensive "needs for physical care, nourishment, comfort, affection and stimulation." (*In re Autumn H., supra,* 27 Cal.App.4th at p. 575.) Therefore, mother could not have shown that the continuation of this parent-child relationship would promote Jayden's well-being to such a degree as to outweigh the well-being he would gain in a permanent home with his adoptive parents.

We conclude that mother was not prejudiced by the court's denial of a contested hearing as she could not have prevailed had she claimed the beneficial parent-child relationship exception. Therefore, although mother did not receive timely notice of the section 366.26 report, this error was harmless beyond a reasonable doubt.

## *DISPOSITION*

The order terminating mother's parental rights is affirmed.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, Acting P. J.

WE CONCUR:

ALDRICH, J.

HEESEMAN, J.